UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

UNITED STATES OF AMERICA,

                Plaintiff,

v.

SARA LIVINGSTON,
a/k/a Sara Fraco,

                Defendant.

Case No. 12-CR-177-JPS

ORDER

       This matter comes before the court on Sarah Livingston's Objections (Docket #24) to Magistrate Judge Aaron E. Goodstein's October 23, 2012 Recommendation that her separate motions to dismiss Count One of the underlying Indictment and to suppress her statement to federal law enforcement agents be denied (Docket #23).

1.     BACKGROUND

       On September 28, 2012, defendant Sara Livingston ("Livingston") filed a motion to dismiss the first count of a five-count indictment for duplicity. (Docket #9). Count One charges that "[b]eginning in approximately December 1, 2007 and continuing to on or about August 28, 2012, in the State and Eastern District of Wisconsin, [Livingston] knowingly stole and converted to her own use and the use of her children, approximately $67,683 belonging to the Social Security Administration, a department or agency of the United States. All in violation of Title 18, United States Code, Section 641." (Docket #1, 4). Counts Two through Five each charge that Livingston made false statements to the Social Security Administration in this same connection. (*Id.*, 5).

Subsequently, on October 1, 2012, Livingston filed a motion to suppress an incriminating statement (the "Statement") made to federal agents on September 28, 2011. (Docket #11). At Livingston's request, an evidentiary hearing was held before Magistrate Judge Aaron E. Goodstein in connection with the suppression motion. (Docket #'s 11, 18 and 19). Following post-hearing submissions by the parties (Docket #'s 21 and 22), Magistrate Goodstein issued his Recommendation (Docket #23) ("the Recommendation"), expressing the opinion that both of Livingston's motions should be denied. Defendant has timely filed an objection (the "Objection") to the Recommendation. (Docket #24).

2. ANALYSIS

The court reviews *de novo* that portion of a recommendation to which the defendant objects. 28 U.S.C. § 636(b)(1). Except for two matters of fact, the Objection addresses only aspects of the Recommendation's legal analysis.

As to the two matters of fact raised in the Objection, the Court addresses each *infra* in footnotes 1 and 2 (corresponding to the footnotes in which these factual matters were raised in the Objection).

After review, the Court finds it appropriate to: (i) adopt the Recommendation as to the motion to suppress, supplementing the Recommendation's thorough and thoughtful analysis with additional comments responsive to the Objection; and (ii) this court concludes that the issues raised in Livingston's motion to dismiss the first count of the indictment will be best left for further consideration in the context of the final pretrial conference, including jury instructions as may become appropriate.

2.1 Motion to Suppress

Livingston argues that the Statement was: (i) taken in violation of *Miranda;* and/or (ii) involuntary. (Docket #24).

2.1.1 *Miranda*

Livingston submits that her *Miranda* argument "turns on whether she was in custody at the time she made [the Statement]." (Docket #24, 4). The Recommendation concludes that Livingston "was not in custody for *Miranda* purposes" when she was interviewed first by her state probation officer and then by federal agents. (Docket #23). Livingston disagrees and mounts two attacks on the "custody" portion of the Recommendation.

First, Livingston asserts that the Recommendation does not apply the facts of her case to the various circumstances that *Sprosty v. Buchler,* 79 F.3d 635, 641 (7th Cir. 1996), sets forth as relevant to the determination of custody (Docket #24, 4), despite the Recommendation's citation to *Sprosty*. Second, Livingston claims that the Recommendation "focuses too much" on *United States v. Cranley*, 350 F.3d 617 (7th Cir. 2003). (Docket #24, 4).

Livingston makes creative arguments attempting to poise her view of the facts to sufficiently dovetail with certain *Sprosty* factors; nonetheless, they come across as particularly strained. Although her arguments certainly reflect zealous advocacy, in the end, the Court finds them unconvincing.

The Court briefly will identify the six *Sprosty* factors cited by Livingston: (1) "whether and to what extent the person has been made aware that he is free to refrain from answering questions"; (2) and (3) "whether there has been prolonged, coercive, and accusatory questioning, or whether police have employed subterfuge in order to induce self-incrimination"; (4) and (5) "the degree of police control over the environment in which the

interrogation takes place, and in particular whether the suspect's freedom of movement is physically restrained or otherwise significantly curtailed"; and (6) "and whether the suspect could reasonably believe that he has the right to interrupt prolonged questioning by leaving the scene." *Sprosty* 79 F.3d at 641 (internal citations omitted).

Here, it is undisputed that: (i) the federal agents "told Livingston that she did not have to answer any questions and she could stop the interview whenever she wanted" (Docket #23, 4); (ii) "the serial questioning didn't consume hours and there's no suggestion that anyone was affirmatively hostile to Livingston" (Docket #24, 5); (iii) Livingston recognized at least one of the federal agents upon their entering the interview room because Livingston had been questioned by that federal agent at Livingston's home earlier that month (Docket #23, 2-4)[1]; (iv) the interview with federal agents occurred at the office of Livingston's state probation officer and, although entry to the office suite required "being buzzed in," thereafter "a person can freely leave" and there is no indication that the office suite housed offices of any law enforcement personnel (*see* Docket #23, 3); (v) Livingston was not physically restrained (Docket #24, 7); and (vi) the federal agents never withdrew their earlier notification that Livingston was free to stop the interview whenever she wanted. Mitigating circumstances cited by Livingston in her Objection are adequately treated in the Recommendation – even if not discussed expressly in connection with *Sprosty* itself – and so the

---

[1] Livingston takes exception to the fact that the Recommendation does not recount that "the federal agent acknowledged [in cross-examination at the evidentiary hearing] his belief that ambush interviews – i.e., ones in which the suspect has no advance notice – are of tactical benefit" but stops short of saying that the agent's shrewd maneuver amounted to the "subterfuge" contemplated by the third *Sprosty* factor cited above. (Docket #24, 5 at n.1).

Court finds no need to further amplify the Recommendation's thorough dissections of such.[2]

Moreover, the Court concurs with the Recommendation's focus on *Cranley* because the facts are, as the Recommendation recounts (and explains through lengthy comparison), "strikingly similar[.]" (Docket #23, 7). In Section 1.1.2 *infra*, the Court addresses two differences between the facts in Livingston's case and the facts in *Cranley* that the Court finds salient and countervailing.

### 2.1.2 Voluntariness

Livingston contends, in sum, that the Statement was involuntary because: (i) she signed a form in the immediately preceding interview (which involved only Livingston and her state probation officer) that said "I have been advised that I must account in a truthful and accurate manner for my whereabouts and activities, and that failure to do so is a violation for which I could be revoked. I have been advised that none of this information can be used against me in criminal proceedings" (Docket #23, 4); and (ii) she believed this immunity remained in effect when the federal agents entered the interview room (notwithstanding the fact that the state probation officer had earlier left the room). (Docket #23, 5). Livingston concedes that the Recommendation "gives the issue a thorough and thoughtful analysis" but argues that "at the end of the day" the Recommendation "places undue emphasis on the fact[s] that: (1) the federal agent advised Livingston of her right of silence; and (2) Livingston knew that the federal agent was a federal

---

[2]However, the Court will highlight that it concurs with the Recommendation's reasons for rejecting Livingston's contention that "Livingston could have reasonably perceived herself as a yet-to-be handcuffed inmate at the moment the federal agent entered the room." (Docket #24, 7); (Docket #23, 8).

agent and not a state probation officer." The Court concurs with the reasoning set forth in the Recommendation in this regard and will amplify briefly.

Two differences between the facts in Livingston's case and the facts in *Cranley* are worth highlighting. In *Cranley*, the topic of immunity from criminal prosecution is not raised in either of the defendant's interviews (though the Seventh Circuit does acknowledge, in passing, in its opinion that "[a]s a matter of fact, Wisconsin does require probationers to answer questions put to them by law enforcement authorities, but grants them immunity from use of the answers in evidence against them"), 350 F.3d at 622, whereas Livingston did sign a form in the context of her first interview – the interview between Livingston and her state probation officer – that contained a notice of immunity from criminal prosecution for certain statements. (Docket #23, 4). However, Livingston's state probation officer left the room after obtaining her signed written statement, and only then did the federal agents enter (unaccompanied), at which point they notified Livingston "that she did not have to answer any questions and she could stop the interview whenever she wanted" (*id.*), whereas the defendant in *Cranley* does not appear to have been given such an option. The Court finds that a reasonable person would recognize that a *federal* agent's notification that an interview can be stopped "whenever the person would like" implies that there is something *at stake* – something *to lose* – and would not, therefore, think that a *state probation officer's* promise of immunity would carry forward to the *federal* context.

2.2    Motion to Dismiss

As for the matter of Livingston's Motion to Dismiss the first count of the indictment as being duplicitous, as earlier noted, the Court concludes that the issues raised in the motion are best left for further consideration in the context of the final pretrial conference, including jury instructions as may become appropriate.

Accordingly,

IT IS ORDERED that Magistrate Judge Aaron E. Goodstein's Recommendation dated October 23, 2012 (Docket #23) be and the same is hereby ADOPTED in part;

IT IS FURTHER ORDERED that the defendant's Motion to Suppress (Docket #11) be and the same is hereby DENIED; and

IT IS FURTHER ORDERED that the defendant's Motion to Dismiss (Docket #9) be and the same is hereby DENIED without prejudice.

Dated at Milwaukee, Wisconsin, this 9th day of November, 2012.

BY THE COURT:

J.P. Stadtmueller
U.S. District Judge